MARLENE S. MURACO, Bar No. 154240
mmuraco@littler.com
MICHAEL W. M. MANOUKIAN, Bar No. 308121
mmanoukian@littler.com
LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, California 95113.2303
Telephone: 408.998.4150
Facsimile: 408.288.5686

Attorneys for Defendants
JABIL, INC. (f/k/a JABIL CIRCUIT, INC.) and
JABIL SILVER CREEK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

KODY WALKER, individually, and on behalf of others similarly situated,

Plaintiff,

v.

JABIL, INC., a corporation; JABIL CIRCUIT, INC., an unknown entity; WOLFE ENGINEERING AND DESIGN, INC.; JABIL SILVER CREEK, INC., a corporation; and DOES 1 through 100, inclusive,

Defendants.

Case No.

**DEFENDANTS' NOTICE OF REMOVAL TO FEDERAL COURT**

(SANTA CLARA SUPERIOR COURT CASE NO. 19CV347835)

Trial Date: TBD

TO THE CLERK OF THE ABOVE ENTITLED COURT AND PLAINTIFF KODY WALKER AND HIS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Defendants Jabil, Inc., Jabil Circuit, Inc., and Jabil Silver Creek, Inc. (collectively "Defendants") hereby effect the removal of the action entitled *Kody Walker v. Jabil, Inc., et al.*, Case No. 19CV347835 from the Superior Court of the State of California for the County of Santa Clara to the United States District Court for the Northern District of California.[1] This removal is based on 28 U.S.C. sections 1332(d), 1441(b), and 1446(b), specifically, on the following grounds:

## I. VENUE

1. The action was filed in the Superior Court of the State of California for the County of Santa Clara. Venue properly lies in the United States District Court for the Northern District of California, San Jose Division, pursuant to 28 U.S.C. sections 84(a), 1391(a), and 1441(a), and Local Rule 3-2(e).

## II. PLEADINGS, PROCESS AND ORDERS

2. On May 21, 2019, Plaintiff Kody Walker filed an original complaint in the Superior Court of California for the County of Santa Clara, entitled *Kody Walker v. Jabil, Inc., a corporation; Jabil Circuit, Inc., an unknown entity; Wolfe Engineering And Design, Inc.; Jabil Silver Creek, Inc., a corporation; and Does 1 through 100, inclusive,* Case No. 19CV347835 ("Complaint"). A true and correct copy of the Complaint is attached as **Exhibit A**.

3. Plaintiff alleges ten causes of action on behalf of himself and other similarly situated employees: 1) Failure to Provide Required Meal Periods; 2) Failure to Provide Required Rest Periods; 3) Failure to Pay Overtime Wages; 4) Failure to Pay Minimum Wages; 5) Failure to Pay All Wages Due to Discharged and Quitting Employees; 6) Failure to Maintain Required Records; 7) Failure to Furnish Accurate Itemized Wage Statements; 8) Failure to Indemnify Employees For Necessary Expenditures Incurred In Discharge Of Duties; 9) Unfair And Unlawful Business Practices; And 10)

---

[1] Because this action is being removed under the Class Action Fairness Act ("CAFA"), there is no requirement that the fourth and final Defendant in this action (Wolfe Engineering and Design, Inc.) join or consent to this removal. *United Steel v. Shell Oil Co.*, 549 F.3d 1204, 1207-1209 (9th Cir. 2008).

Penalties Under The Labor Code Private Attorneys General Act ("PAGA").

4. Plaintiff seeks to represent a class of "all current and former non-exempt employees of Defendants in the State of California at any time within the period beginning four (4) years prior to the filing of this action and ending at the time this action settles or proceeds to final judgment (the "CLASS PERIOD")." The CLASS PERIOD thus runs from May 21, 2015 through the present.

5. Per an order of the Santa Clara County Superior Court dated May 28, 2019, Plaintiff's case was deemed complex, all discovery was stayed, and all defendants were prohibited from filing any responsive pleading prior to the initial Case Management Conference ("CMC"), which was scheduled for September 6, 2019. A true and correct copy of the Order Deeming Case Complex And Staying Discovery is attached as **Exhibit B.**

6. Plaintiff served the Complaint on Defendants Jabil, Inc., Jabil Silver Creek, Inc. and Wolfe Engineering and Design, Inc. on July 23, 2019. Plaintiff served the Complaint on Defendant Jabil Circuit, Inc. on July 25, 2019.

7. At the CMC on September 6, 2019, the Court ordered Jabil, Inc. to file a responsive pleading on or before September 30, 2019 and left the stay as to responsive pleadings in place as to the remaining defendants. The Court likewise left the discovery stay in place as to all Defendants other than Jabil, Inc.

8. Jabil, Inc. filed a General Denial and Affirmative Defenses to the Complaint on September 30, 2019. A true and correct copy of Jabil Inc.'s Answer is attached as **Exhibit C.**

9. On October 7, 2019, Plaintiff filed an Amendment to Complaint seeking to remedy the fact that he had named as a Defendant and served Wolfe Engineering and Design, Inc., a company that had no relation to Jabil, Inc. or Plaintiff, rather than Wolfe Engineering, Inc., an entity that had employed Plaintiff before he was employed by Jabil, Inc. As of the date of this Removal, the Santa Clara County Superior Court docket lists Plaintiff's proposed Amendment and Order as "pending". A true and correct copy of Plaintiff's Amendment to Complaint is attached as **Exhibit D.** To date, Plaintiff's Complaint has not been served on Wolfe Engineering, Inc.

10. Defendants Jabil Silver Creek, Inc. and Jabil Circuit, Inc. each filed a General Denial and Affirmative Defenses to the Complaint on October 30, 2019. Jabil Silver Creek, Inc.'s and Jabil

Circuit, Inc.'s Answers are attached as **Exhibits E and F**, respectively.

11. A true and correct copy of the Santa Clara County Superior Court's entire remaining file is attached as **Exhibit G.** An index to the state court file is located directly behind the tab for Exhibit G. Each individual document in the file is attached behind the index, as Exhibits G1-G11.

12. To Defendants' knowledge, no further process, pleadings, or orders related to this case have been filed in Santa Clara County Superior Court.

## III. CLASS ACTION FAIRNESS ACT ("CAFA") JURISDICTION

13. This action is properly removable under 28 U.S.C. § 1441(a), as this Court has original jurisdiction over the action under the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2) & (d)(6); 28 U.S.C. § 1332(d)(5)(B). CAFA removal requires (a) a class size of at least 100 members, (b) at least one plaintiff and one defendant that are citizens of different states, and (c) an aggregate amount in controversy exceeding $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). Each requirement is met here.

14. The United States Supreme Court has held that under 28 U.S.C. section 1446(a), a defendant seeking to remove a case to federal court need only file "a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553 (2014). The Court further held this language "tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure" and that "[a] statement 'short and plain' need not contain evidentiary submissions." *Id.* at 551, 553.

### A. Plaintiff's Citizenship Is Diverse From That Of Defendant Jabil, Inc., Formerly Known As Jabil Circuit, Inc.

15. CAFA's diversity requirement is satisfied when at least one plaintiff is a citizen of a state in which one defendant is not a citizen. *See* 28 U.S.C. §§ 1332(d)(2)(A), 1453. In other words, if any class member is diverse from any defendant, minimal diversity is met. *See Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1276 (9th Cir. 2017) ("Under CAFA there is sufficient diversity to establish federal diversity jurisdiction so long as one class member has citizenship diverse from that of one defendant. 28 U.S.C. § 1332(d)(2)(A). Since many merchants doing business in California, and members of the class as originally described, are not citizens of California, the requirement was

met.")

1. **Plaintiff Is A Citizen Of California.**

16. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). "A person is 'domiciled' in a location where he or she has established a fixed habitation or abode of a particular place and [intends] to remain there permanently and/or indefinitely." *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).

17. Plaintiff alleges that he "is a male resident of the State of California…." (Complaint, ¶ 3.) Plaintiff's allegation that he is a resident of California is *prima facie* evidence that his domicile is in California, and therefore, Plaintiff is a citizen of California. *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986) (allegations of residency in a state court Complaint can create a rebuttable presumption of domicile supporting diversity of citizenship); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court Complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise").

2. **Defendant Jabil, Inc. (f/k/a Jabil Circuit, Inc.) Is Not a Citizen of California.**

18. Defendant Jabil Circuit, Inc. changed its name to Jabil, Inc. effective June 5, 2017. The transaction consisted solely of a name change – and did not involve a merger, acquisition or other change of corporate form. Jabil, Inc. (f/k/a Jabil Circuit, Inc.) is not a citizen of California. "[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Defendant Jabil, Inc. (f/k/a Jabil Circuit, Inc.) is now, and was at the time this action commenced, a corporation formed under the laws of the State of Delaware, with its principle place of business in St. Petersburg, Florida.

19. To determine a corporation's principal place of business, courts apply the "nerve center" test, which deems the principal place of business to be the State in which the corporations' officers direct, control, and coordinate the corporation's activities. *The Hertz Corporation v. Friend et al.*, 559 U.S. 77, 78 (2010) ("the phrase 'principal place of business' in § 1332(c)(1) refers to the

place where a corporation's high level officers direct, control and coordinate the corporation's activities, *i.e.*, its 'nerve center,' which will typically be found at its corporate headquarters.") Per the "nerve center" test, it is clear that Defendant Jabil, Inc. (f/k/a Jabil Circuit, Inc.)'s principal place of business is the State of Florida. *Id.; State Farm Fire & Cas. Co. v. Byrd* , 710 F.Supp. 1292, 1293 (N.D. Cal. 1989). Specifically, when this action was commenced in state court, Defendant Jabil, Inc. was, and still is, a corporation organized under the laws of the state of Delaware. In addition, Florida is home to Jabil, Inc.'s corporate headquarters. The Florida office houses Jabil, Inc.'s executive and administrative functions, and clearly qualifies as the company's principal place of business. In summary, Defendant Jabil, Inc. (f/k/a Jabil Circuit, Inc.) is a citizen of the State of Delaware, where it is incorporated, and the State of Florida, where it has its principal place of business. *See Hertz Corp. v. Friend*, 559 U.S. at 78.

17. Accordingly, CAFA diversity is satisfied because at least one plaintiff is diverse from at least one defendant.

**B. The Proposed Class Contains At Least 100 Members.**

18. CAFA requires that the aggregated number of members of all classes proposed in a complaint be at least 100. 28 U.S.C. § 1332(d)(5)(B).

19. As discussed above, Plaintiff seeks to represent, "all current and former non-exempt employees of DEFENDANTS in the State of California at any time within the period beginning four (4) years prior to the filing to this action and ending at the time this action settles or proceeds to final judgment." (Complaint ⁋ 5.) Therefore, Plaintiff seeks to represent all current and former non-exempt employees of Jabil, Inc. (f/k/a Jabil Circuit, Inc.), Jabil Silver Creek, Inc. and Wolfe Engineering and Design, Inc. from May 21, 2015, through the present.

20. Plaintiff alleges that "[t]he potential class is a significant number," but makes no attempt to quantify how many potential class members are at issue. (Complaint, ¶ 15a.) In fact, during the period of May 21, 2015 to October 24, 2019, Defendant Jabil, Inc. (f/k/a Jabil Circuit, Inc.) *hired* 1,385 individuals to work as non-exempt employees within the State of California. Clearly, therefore, there are well over 100 putative class members at issue in this action.

**C. None Of The Defendants Is A Government Entity.**

21. CAFA jurisdiction does not attach when the primary defendants are states, state officials, or other governmental entities against whom the district court may be foreclosed from ordering relief. (28 U.S.C. § 1332(d)(5)(A).) Here, none of the four named defendants is a state, state official, or other governmental entity.

**D. The Amount in Controversy Exceeds $5,000,000.**

22. While Defendants specifically deny liability as to all of Plaintiff's claims, and specifically deny the appropriateness of the case proceeding as a class action, Defendants have a reasonable, good faith believe that the amount in controversy, as to the causes of action alleged and pled by Plaintiff, exceeds $5,000,000. The following calculations in support of the amount in controversy analysis are not intended as an admission that any of Plaintiff's allegations have merit.

23. In calculating the amount in controversy under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. 28 U.S.C. § 1332(d)(6).

24. In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. REP. 109-14 at 42. The Senate Judiciary Committee's Report on the final version of CAFA is clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. REP. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000' the court should err in favor of exercising jurisdiction over the case…."). "[T]he Supreme Court left no doubt 'that no anti-removal presumption attends cases involving CAFA.'" *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183 (9th Cir. 2015) (citing *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 554 (2014)). This "declaration is bolstered by the Court's reference to Congress's 'overall intent … to strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications.'" *Jordan*, *supra,* 781 F.3d at 1183-84 (quoting S. Rep. No.

109-14, p. 43 (2005) (CAFA's "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.")

25. A " defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee, supra,* 135 S.Ct. at 553-554 ("[W[hen a defendant seeks federal court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court."); *Ibarra v. Manheim Inv., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015) (The defendant may use assumptions reasonably grounded in direct or circumstantial evidence and in plaintiff's allegations). A "damages assessment may require a chain of reasoning that includes assumptions," as long as the assumptions have "some reasonable ground underlying them." *Ibarra*, 775 F.3d 1193 at 1199; *see also Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2012) (reversing remand order because Defendant need not concede liability for the entire amount, and the district court therefore erred by effectively asking the Defendant to prove exposure); *accord Rhoades v. Progressive Cas. Ins.*, 410 Fed. Appx. 10 (9th Cir. Nov. 23, 2010) (wage and hour case citing *Lewis* and holding "[o]nce [defendant] has explained plausibly how the stakes exceed $5 million," removal is proper "unless it is legally impossible for the plaintiff to recover that much").

26. For purposes of determining whether a defendant has satisfied the amount in controversy requirement, the Court must presume that the Plaintiff will prevail on her claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d. 993, 1001 (C.D. Cal. 2002) (citing *Burns v. Windsor Ins. Co.*, 31 F. 3d 1092, 1096 (11th Cir. 1994) (stating that the amount in controversy analysis presumes that "'plaintiff prevails on liability'") (other internal citation omitted)). The ultimate inquiry is what amount is put "in controversy" by plaintiff's complaint, not what a defendant might actually owe. *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005); *accord Ibarra v. Manheim Inv., Inc.* 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (explaining that even when the court is persuaded the amount in controversy exceeds $5,000,000, defendants are still free to challenge the actual amount of damages at trial because they are only estimating the amount in controversy).

27. Plaintiff's Complaint does not identify an amount in controversy. *See* Complaint, *passim.* Where the amount in controversy is in dispute, a reviewing Court may consider facts

presented in the removal petition. *See Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004).

28. Plaintiff does allege that each Defendant maintained "policies and practices of not paying PLAINTIFF and CLASS MEMBERS all wages earned and due, through methods and schemes which include, but are not limited to, failing to pay overtime premiums; failing to properly calculate the regular rate of pay for purposes of paying overtime by failing to include all forms of remuneration, including, *inter alia,* shift differentials and incentive compensation; failing to provide rest and meal periods; failing to properly maintain records; failing to provide accurate itemized statements for each pay period; failing to properly compensate PLAINTIFF and CLASS MEMBERS for necessary expenditures; and requiring, permitting or suffering the employees to work off the clock, in violation of the California Labor Code and the applicable Welfare Commission ("IWC") Orders." (Complaint, ¶ 12.) Plaintiff further asserts that Defendants engaged in a "systematic course of illegal payroll practices and policies, which was applied to all non-exempt employees in violation of the Labor Code," and that Plaintiff's claims "are typical of the class because DEFENDANTS subjected all non-exempt employees to identical violations of the Labor Code". (Complaint, ¶ 15.) In his Prayer for Relief, Plaintiff seeks to recover: 1) compensatory damages in amount to be ascertained at trial; 2) restitution of all monies due to Plaintiff and the members he seeks to represent, as well as disgorged profits; 3) meal and rest period compensation; 4) liquidated damages; 5) preliminary and permanent injunctions; 6) waiting time penalties; 7) statutory and civil penalties; 8) interest on the unpaid wages; 9) attorneys' fees and costs; 10) declaratory relief; 11) class certification; 12) an order appointing Plaintiff the class representative; and 13) such further relief as the Court may deem just and proper. *See* Complaint, Prayer for Relief.

29. The foregoing allegations fairly convey that Plaintiff asserts that each and every class member was deprived of earned wages on one or more occasions during the class period and that those class members who are former employees are entitled to recover waiting time penalties under Labor Code sec. 203. (Complaint, ¶¶ 33-39 (setting forth a cause of action for waiting time penalties on behalf of those class members who quit or were discharged).

30. The limitations period for a waiting time penalty claim is three years – which means Plaintiff may seek such penalties for any class member whose employment was terminated between

May 21, 2016 and the present. *Pineda v. Bank of America, N.A.*, 50 Cal.4th 1389, 1398 (2010). Defendant Jabil, Inc. (f/k/a Jabil Circuit, Inc.)'s payroll records reveal that during the period of May 21, 2016 through October 24, 2019, 1,077 non-exempt California employees terminated employment with Jabil, Inc. (f/k/a Jabil Circuit, Inc.). Those employees had an average final rate of pay of $20.81/hour and averaged more than eight hours of work per day. As Plaintiff is seeking 30-days' wages for each such terminated employee, the amount in controversy as to Plaintiff's waiting time penalty claim is 1,077 employees x $20.81/hour x 8 hours/day x 30 days = $5,378,969.

31. Plaintiff is also seeking to recover unpaid meal period premiums for each instance in which an employee was allegedly not provided with a compliant meal period. As discussed above, Plaintiff does not specify how often employees were allegedly deprived of compliant meal breaks but does allege it was a systemic practice that applied to all employees. Defendant Jabil, Inc. (f/k/a Jabil Circuit, Inc.) operated at more than six distinct physical locations within California during the applicable limitations period. As Plaintiff worked only at one of those sites, the factual basis for his assertion that "all non-exempt employees" were subjected "to identical violations of the Labor Code" is not apparent. Nonetheless, Defendant Jabil, Inc. (f/k/a Jabil Circuit, Inc.)'s records reveal that during the period of May 21, 2015 through October 24, 2019, non-exempt employees working for Jabil Circuit, Inc./Jabil, Inc. within California worked a combined total of more than 625,000 meal-eligible shifts (i.e., shifts in excess of five hours in length). During the stated time period, non-exempt employees had an average rate of pay of $20.33/hour. If Plaintiff asserts that he and other putative class members were deprived of just 10% of their eligible meal breaks (e.g., the equivalent of one every two weeks for those who work a five day week), the amount in controversy for Plaintiff's meal period claim would conservatively be 625,000 shifts x 10% alleged violation rate x $20.33/hour for premium pay = $1,270,625.

32. The preceding two paragraphs demonstrate $6.6M in controversy, and that is without crediting any putative class member with a single rest period violation, any off-the-clock work, wage statement violations, or unpaid overtime.

## IV. THE REMOVAL IS TIMELY.

33. This Notice of Removal is timely. 28 U.S.C. § 1446(b) provides two 30-day windows

for removing a case. Section 1446(b)(1) specifies that a defendant must remove "within 30 days after receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). If, however, "the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). In addition, the Ninth Circuit has held that a defendant may remove "when it discovers, based on its own investigation, that a case is removable." *Roth v. CHA Hollywood Med. Ctr.*, 720 F.3d 1121, 1123 (9th Cir. 2013). Thus, the two 30-day periods set forth in section 1446(b) are not the exclusive periods for removal. *Id.* At 1125 ("We conclude that §§ 1441 and 1446, read together, permit a defendant to remove outside the two thirty-day periods on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines.") In short, a CAFA case "may be removed at any time, provided that neither of the two thirty-day periods under § 1446(b)(1) and (b)(3) has been triggered." *Roth, supra,* 720 F.3d at 1126. *See also Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014) ("[A]s long as the complaint or 'an amended pleading, motion, order or other paper' does not reveal that the case is removable," a defendant, in effect, "may remove at any time.")

34. To trigger the 30-day removal periods under § 1441(b), the grounds for removal must be evident from the face of the pleadings. *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005). That is, the determination of removability is based on the "four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry." *Id*. If it is unclear from the complaint whether the case is removable, the pleadings are considered "indeterminate," and the 30-day removal window is not triggered. *Id*. at 693. A "defendant does not have a duty of inquiry if the initial pleading or other document is 'indeterminate' with respect to removability." *Roth, supra,* 720 F.3d at 1125. "Even the simplest of inquiries is not required….[D]efendants are not charged with *any* investigation, not even into their own records." *Stiren v. Lowes Home Ctrs.,* LLC, 2019 U.S. Dist. LEXIS 74656, *709 (C.D. Cal. May 2, 2019). Accordingly, "even if a defendant could have discovered grounds for removability through investigation, it does not lose the right to remove because

it did not conduct such an investigation and then file a notice of removal within thirty days of receiving the indeterminate document." *Roth, supra*, 720 F.3d at 1125; *Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 791 (9th Cir. 2018).

35. Here, Plaintiff's Complaint is clearly indeterminate. It does not state the number of people in the class, does not specify anyone's rates of pay, does not provide any substantive facts regarding the basis for Plaintiff's claims (e.g., there is no explanation as to how, why or how often employees were allegedly being deprived of meal or rest breaks, how, why or how often they were allegedly working off the clock, *etc.*) and does not specify the citizenship of any of the Defendants. *See, e.g., Zhao v. RelayRides, Inc.*, 2017 U.S. Dist. LEXIS 204415, *32 (N.D. Cal. Dec. 12, 2017) (plaintiff's complaint "did not reveal on its face that the action was removable under CAFA" where it "contained no specific allegations regarding the size of the two proposed classes (including whether there were more than 100 class members), or the amount of either [the plaintiff's] damages or the damages of the class as a whole"); *Trahan v. U.S. Bank Nat'l Ass'n*, 2014 U.S. Dist. LEXIS 4019, *11-12 (documents were indeterminate and did not trigger 30-day removal deadline where they "did not expressly state that the amount in controversy would exceed $5,000,000…and did not make any specific assertions about the amount of damages that might be available to the class or the value of injunctive relief"). Nor have Defendants received any other "pleading, motion, order or other paper" in this matter that revealed on its fact that this matter was removable under CAFA. As Defendants remained free to conduct their own investigation and remove at any time, this removal is timely.

**V. NOTICE TO STATE COURT AND PLAINTIFF'S COUNSEL**

36. Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Northern District of California, written notice of the removal will be given by the undersigned to Plaintiff's Counsel of Record, Matern Law Group, P.C. and a copy of this Notice of Removal will be filed with the Clerk of the Superior Court for the County of Santa Clara as required by 28 U.S.C. § 1446(d).

**VI. CONCLUSION**

37. For the reasons describe above, Plaintiff's claims are properly removable under 28 U.S.C. section 1332(d). Accordingly, Defendant respectfully requests that this Court proceed with this matter as if it had been originally filed herein.

Dated: November 1, 2019

*_/s/ Marlene S. Muraco_*
MARLENE S. MURACO
MICHAEL W. M. MANOUKIAN
LITTLER MENDELSON, P.C.
Attorneys for Defendants
JABIL, INC. (f/k/a JABIL CIRCUIT, INC.)
and JABIL SILVER CREEK, INC.

4839-1479-7995.1 101859.1001